UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIONDRA B., | ) |
| Plaintiff, | ) No. 20-cv-7544 |
| v. | ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Diondra B.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under the Social Security Act. Plaintiff has filed a motion for summary judgment.[2] **For** the reasons detailed below, Plaintiff's Motion for Summary Judgment (dkt. 18) is GRANTED. The case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**1.  Relevant Medical Background**

Plaintiff, pregnant at the time, presented to Loyola Hospital on July 24, 2018, with complaints of headache and left sided vision changes. (R. 345.) She had been treated with eye patches, which helped with her headaches but not her visual defects. (*Id*.) Five days after Plaintiff gave birth, she underwent brain surgery to remove a macroadenoma on her pituitary gland. (R. 487.) At her post-operative follow-up appointment two weeks later, she reported chronic headache and vision changes, as well as issues with anxiety and depression. (R. 335, 337.)

Approximately five months later, Plaintiff presented for an MRI of her brain. (R. 689.) The

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] Plaintiff has filed a Brief in Support of Reversal and Remand [dkt. 18], which the Court construes as a motion for summary judgment.

exam revealed Plaintiff has concave superior margin of the pituitary gland suggesting a partially empty sella.[3] (R. 690.) It also revealed heterogenous T2 hyperintensity within the left sphenoid sinus possibly inflammatory and/or posttreatment changes. (*Id.*) That same day, Plaintiff presented to Dr. Anna Sokol, PsyD. for a mental status examination. (R. 695.) During examination, Plaintiff relayed anxiousness and stress in the aftermath of her brain surgery. (R. 698.) She also continued to complain of chronically occurring headaches. (R. 695.) Plaintiff was diagnosed with unspecified anxiety disorder and unspecified trauma and stress-related disorder. (R. 698.)

On March 14, 2019, Plaintiff presented to Dr. Normal Lopez, M.D., at Loyola Hospital for a routine follow up of her surgery. (R. 710.) Sher reported improved vision, but continued headaches and neck stiffness. (*Id.*) She underwent another brain MRI, which showed a "nice reconstitution of the pituitary gland." (R. 711.) The neurologist caveated, however, "she may have symptoms suggestive of endocrine deficiency and may need hormonal replacement." (*Id.*) Dr. Lopez restarted Plaintiff on her medications. (*Id.*)

In June of 2019, Plaintiff returned to see Dr. Lopez, who adjusted her medications and asked her to return in three months. (R. 19.) At her August 2019 follow-up, Plaintiff reported to Dr Lopez she had stopped her medications because she felt awful, very tired, and developed headaches after taking it. (R. 835.) Dr. Lopez asked Plaintiff not to stop her medications again, and was advised to follow up with her neurosurgeon for her headaches. (R. 838.)

Plaintiff presented to the Loyola Neurosurgery Clinic on September 5, 2019, for a follow up and complaints of issues with her cognition and memory. (R. 849.) She reported frequent headaches which could be severe and debilitating, as well as issues with dropping things and forgetfulness. (*Id.*)

---

[3] "Empty Sella Syndrome (ESS) is a disorder that involves the *sella turcica*, a bony structure at the base of the brain that surrounds and protects the pituitary gland. ESS is often discovered during radiological imaging tests for pituitary disorders. ESS occurs in up to 25 percent of the population. An individual with ESS may have no symptoms or may have symptoms resulting from partial or complete loss of pituitary function (including headaches, low sex drive, and impotence)." https://www.ninds.nih.gov/health-information/disorders/empty-sella-syndrome (last accessed June 21, 2022).

Plaintiff returned on October 31, 2019, for a follow up appointment. (R. 864.) She reported headaches, sternal pain, spine pain, fatigue and tiredness. (*Id.*) The neurologist noted Plaintiff had "new complex pain syndrome" with severe headaches and memory lapses. (*Id.*) Similarly, on November 11, 2019, Plaintiff reported experiencing both severe headaches lasting 24 hours, and daily headaches which were milder in nature. (R. 870.) She reported photophobia, nausea, and pain in her neck and back associated with her headaches. (*Id.*)

On December 6, 2019, Plaintiff returned to Loyola Pain Medicine Clinic with complaints of headache, thoracic and lumbar pain. (R. 928.) She reported that her headache was 50% better upon evaluation. (*Id.*) She described her neck pain as hot, stiff, tender, sharp sensation with movement. (*Id.*) She described her thoracic pain as sharp, aching, stabbing and throbbing in sensation. (R. 929.) Clinicians recommended she continue taking her medications, and to utilize HEP, hot/cold packs, back stretches, core strengthening, a TENS unit, and to start aquatic therapy. (R. 936.) A few weeks later, Plaintiff continued to report both severe and mild headaches often, and slight improvement with Gabapentin. (*Id.*)

**2.     Procedural Background and ALJ Decision**

On November 2, 2018, Plaintiff filed claims for both disability insurance benefits and supplemental security income, each with an alleged onset date of July 16, 2018. (Administrative Record ("R.") R. 10.) Plaintiff's claim was denied initially and upon reconsideration, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Subsequently, on March 27, 2020, the ALJ issued an unfavorable decision finding Plaintiff not disabled under the Act. (R. 10-26.)

The ALJ's decision followed the familiar five-step analytical process required by 20 C.F.R. § 416.920. As part of the that decision, the ALJ found Plaintiff had the following severe impairments: history of panhypopituitarism status-post resection of pituitary mass with lymphatic hypophysitis; fibromyalgia; and migraine headaches. (R. 12-13.) The ALJ determined that Plaintiff's anxiety is a

3

nonsevere impairment. (R. 13-15.) The ALJ crafted a light work residual functional capacity ("RFC") that purported accommodate Plaintiff's headaches "with the limitations to no concentrated exposure to extremes of cold or vibrations (vibrating tools or surfaces); work in environment with no more than moderate noise levels (per DOT description – i.e., office level noise); and no concentrated exposure to dusts, fumes, gasses, or poor ventilation." (R. 17, 24.) The ALJ found Plaintiff capable of performing her past relevant work as an administrative assistant, as well as other jobs that exist in significant numbers in the national economy. (R. 24-25.) Therefore, the ALJ found Plaintiff not disabled under the Social Security Act. (R. 26.)

Plaintiff sought Appeals Council review of the ALJ's decision. (R. 205-07.) On October 16, 2020, the Appeals Council denied Plaintiff's request for review (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Plaintiff, through counsel, filed the instant action on December 18, 2020, seeking review of that decision. (Dkt. 1.)

**2.     Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical

bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C. § 405(g).

**3.    Discussion**

Plaintiff contends the ALJ improperly accommodated Plaintiff's severe migraine headaches within the RFC. The Court agrees.

As mentioned above, the ALJ determined that Plaintiff's migraine headaches were a severe impairment, that significantly limits her ability to do basic work activities. (R. 12; 20 C.F.R. § 404.1520(c)). The ALJ then determined that Plaintiff's headaches could be accommodated "with the limitations to no concentrated exposure to extremes of cold or vibrations (vibrating tools or surfaces); work in environment with no more than moderate noise levels (per DOT description – i.e., office level noise); and no concentrated exposure to dusts, fumes, gasses, or poor ventilation." (R. 17, 24.)

However, these accommodations are devoid of any actual connection to Plaintiff's migraine headaches. The idea that any of these limitations would prevent Plaintiff's migraine headaches from occurring has no evidentiary basis, either in the form of an objective medical opinion, medical research, or Plaintiff's own testimony. No doctor advised Plaintiff that merely avoiding the hazards the ALJ listed would eliminate or even reduce the occurrence of her headaches. Nor did Plaintiff ever complain that any of those things caused or exacerbated her migraines. Plaintiff did testify that she is very sensitive to light and that too much light will often bring on a very bad headache (and that she often wears an eye patch on her left eye to block some light out). (R. 56.) This represented the closest thing to any sort of migraine trigger in the record, and yet the ALJ did not accommodate this limitation or explain why she found the allegation to lack credibility. Plaintiff's treating neurologist, Dr. Michael Doerrier, opined that Plaintiff had "worsening" headaches due to "possible rheumatalogic disorder"

5

and lymphotic hypophysitis, not because she was sensitive to temperature, noise, vibration or fumes as the ALJ concluded. (R. 798.)

Therefore, it appears to the Court the ALJ's RFC impermissibly contains limitations that reflect the ALJ's own non-medical judgment as to what would prevent Plaintiff's migraines from occurring, which the Seventh Circuit has referred to as "a clear no-no." *Goins v. Colvin*, 764 F. 3d 677, 680 (7th Cir. 2014). There is no substantial evidence that would support a finding that the temperature, vibration, noise, or ventilation restrictions adopted by the ALJ would prevent Plaintiff from having between one and twenty migraine headaches per month, as the record suggests (to say nothing of her milder headaches).[4]

Additionally, based on Plaintiff's severe migraines, Plaintiff faults the ALJ for not including (or explaining why she omitted) an off-task finding in her RFC. The Court agrees the ALJ's decision also lacks an explanation for how she concluded Plaintiff would either be able to remain on task when a migraine occurred or that she would never experience a migraine at work. The evidence indicates Plaintiff's migraines last at least several hours, and she mostly cries during that time, with her medications leaving her incoherent and tired. (R, 17, 22, 57; *see, also*, fn. 4, *infra*.) Yet the ALJ did not account for any absentee days or time off-task in the RFC determination. That suggests the ALJ did not believe Plaintiff that her migraines were so severe that the pain would cause her to cry throughout an episode, or that she might be incoherent or tired after a migraine subsided. Of course, the ALJ was not required to credit Plaintiff's statements regarding the intensity and limiting effects of her symptoms. However, the ALJ did not sufficiently account for why these specific symptoms were not

---

[4] The Administrative Record reflects that Plaintiff has reported "frequent headaches…1-2 days a month the headaches are severe and debilitating." (R. 849.) The Record also reflects that Plaintiff reported "using norco daily for her headaches." (R. 864.) Additionally, Plaintiff complained to her treatment providers of "severe headaches: 4 per week, each lasting 24 hours; milder headaches: 7 days per week." (R. 870, 877, 884.) Similarly, another treatment note in the Record also reflects Plaintiff's reports of "severe headaches: 3 in the last 2 weeks lasting 6-8 [hours each]; milder headaches: 7 in the last 2 weeks." (R. 919.) Plaintiff also reported "severe headaches: 15-20 in the last month lasting 5-6 hours (progressively improving on gabapentin); milder headaches: 25 in the last month." (R. 944.) Plaintiff also testified at the Administrative Hearing she experiences headaches "27 out of 30 days a month." (R. 57.)

credited here. The ALJ accepted that migraines represented a severe impairment, but it is unclear why the ALJ did not provide limitations reflecting the symptom intensity and frequency reported by Plaintiff in the hearing and in treatment notes (or discuss why an off-task finding was not appropriate).

Based on the foregoing, the Court must remand the ALJ's decision. On remand, the ALJ is directed to consider how Plaintiff's migraines, even when triggered outside of work, will affect her ability to work instead of only speculatively focusing on how to reduce "migraine triggers" in the workplace.

## 4. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (dkt. 18) is GRANTED. The case is remanded for further proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff.

Entered: 6/23/2022

Susan E. Cox,
United States Magistrate Judge